[No. 30829-1-II.   Division Two.   July 13, 2004.]

DENNIS PAVLINA, ET AL., *Appellants*, v. THE CITY OF VANCOUVER, *Respondent*.

*Le Anne M. Bremer* (of *Miller Nash, L.L.P.*), for appellants.

*Ted H. Gathe, City Attorney,* and *James J. McNamara, Assistant,* for respondent.

BRIDGEWATER, J. — Dennis Pavlina and Gold Medal Group, LLC appeal the imposition of impact fees imposed on them when they obtained a building permit for a commercial building. We hold, consistent with our decision in *New Castle Investments, LLC v. City of La Center*, 98 Wn. App. 224, 989 P.2d 569 (1999), *review denied*, 140 Wn.2d 1019 (2000), that although preliminary plat approval occurred in 1988, before the impact fee ordinance was adopted in 1995, the imposition of impact fees was correctly calculated at the time the petitioner applied for the building permit in 2002. We affirm and award attorney fees to the city of Vancouver.

Dennis Pavlina and Gold Medal Group, LLC are current owners of an office building project located in Clark County.[1] In October 1988, Clark County preliminarily approved short plat no. 88-79-1722. This approval created two lots; one lot became Parkway Plaza Phase III and the other lot became Parkway Plaza Phase IV (Phase IV). Parkway Plaza Phase III is not at issue in this appeal. The final short plat approval occurred on November 23, 1988.

As a condition of the plat approval, each lot in the short plat had to participate in the Road Improvement District #87-01 based on its frontage on NE 77th Avenue. When the plat received approval, improvements to NE 77th Avenue had already been completed. Between preliminary and final short plat approval, in November 1988, the County preliminarily approved a site plan for Phase IV. Clark County issued a Determination of Nonsignificance (DNS) under the State Environmental Policy Act (SEPA), chapter 43.21C RCW, on May 2, 1988. At that time, the number of vehicular trips the project would generate was unknown. But a handwritten note in the margin of the SEPA checklist suggested that there would be 615 addi-

---

[1] We refer to Pavlina and Gold Medal Group, LLC as "Pavlina."

tional daily trips (ADTs) per phase. Because the project received a DNS, Clark County did not impose any measures to mitigate the impacts of the additional trips on the surrounding roadways.

The city of Vancouver (the City) annexed the site on January 1, 1993. In 1995, the City adopted an impact fee ordinance according to chapter 82.02 RCW. The City granted final site plan approval on October 28, 2002. It issued building permits on November 21, 2002. This same day, Pavlina paid the required impact fees under protest. Pavlina then appealed the impact fees.

On January 30, 2003, an open record appeal hearing occurred before the City's hearing examiner. The hearing examiner found the $111,112 in fees was consistent with chapter 20.97 of the Vancouver Municipal Code (VMC) and relevant state law. Pavlina then filed a Land Use Petition Act (LUPA) appeal with the Clark County Superior Court. After a hearing, the superior court affirmed the hearing examiner's decision.

## I. Standard of Review

■ ■ LUPA, chapter 36.70C RCW, governs review of land use decisions. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 175, 4 P.3d 123 (2000). This court may grant relief to Pavlina under RCW 36.70C.130, if Pavlina can establish that one of the standards in the statute has been met. *Thornton Creek Legal Def. Fund v. City of Seattle*, 113 Wn. App. 34, 47, 52 P.3d 522 (2002), *review denied*, 149 Wn.2d 1013 (2003). The standards are:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1)(a)-(f). Pavlina asserts that subsections (b) and (d) apply to his case. On review of a LUPA decision, this court stands in the shoes of the superior court and reviews the hearing examiner's action on the basis of the administrative record. *Wells v. Whatcom County Water Dist. No. 10*, 105 Wn. App. 143, 150, 19 P.3d 453 (2001).

## II. Legislative History

In 1990, the legislature adopted RCW 82.02.050 as part of the Growth Management Act, chapter 36.70A RCW. RCW 82.02.050 authorizes cities to impose impact fees on those involved in development activities. RCW 82.02.090(1) defines "[d]evelopment activity" as "any construction or expansion of a building, structure, or use, any change in use of a building or structure, or any changes in the use of land, that creates additional demand and need for public facilities."

RCW 82.02.090 distinguishes between "[p]roject improvements" and "[s]ystem improvements." Project improvements are site improvements and facilities designed to provide service for a particular development project and "that are necessary for the use and convenience of the occupants or users of the project, and are not system improvements." RCW 82.02.090(6). System improvements are public facilities included in a capital facilities plan that are designed to provide service to service areas within the community at large. RCW 82.02.090(9).

A city can impose impact fees collected under RCW 82.02.050 only on system improvements that are reasonably related to new development. RCW 82.02.050(3)(a). The fees shall not exceed a "proportionate share" of the costs of system improvements reasonably related to the new development. RCW 82.02.050(3)(b); *City of Olympia v. Drebick*, 119 Wn. App. 774, 83 P.3d 443 (2004). And finally, the fees shall be used for system improvements that will reasonably benefit the new development. RCW 82.02.050(3)(c). A "[p]roportionate share" is that portion of the cost of public facility improvements that are reasonably related to the service demands and needs of new development. RCW 82.02-.090(5).

RCW 82.02.020 is another tool for cities to impose the cost of constructing and maintaining public facilities and services on the developments creating the need for these services and facilities. This statute enables cities to mitigate the "direct" impacts of new development with reasonably and necessary exactions and dedications.

■ A municipality need not spend impact fees collected under RCW 82.02.050 on infrastructure that specifically benefits a particular development. *Wellington River Hollow, LLC v. King County*, 113 Wn. App. 574, 587, 54 P.3d 213 (2002), *review denied*, 149 Wn.2d 1014 (2003). Instead, the impact fees need only provide a general benefit to the entire area. *Wellington River Hollow*, 113 Wn. App. at 587.

The City enacted VMC 20.97.030(C) and VMC 20.97-.060(B) and (C) in 1995 after the legislature enacted RCW 82.02.050. VMC 20.97.030(C) states: "To the extent that new development in service areas and overlay service areas places demands on the public facility infrastructure, those demands should be partially satisfied by shifting a proportionate share of the responsibilities for financing the provision of such new facilities from the public at large to the developments actually creating the demands." These enactments are similar to RCW 82.02.050(1).

VMC 20.97.060(B) and (C) illustrate how the City plans to impose impact fees on "new development and growth." RCW 82.02.050. The relevant parts of those sections state:

(B) For single-family/duplex residential subdivisions and short subdivisions hereinafter approved, the per lot impact fee shall be calculated at the time of preliminary plat or short plat approval, noted on the face of the final plat, and imposed on a per lot basis at the time of building permit application. For new multi-family and non-residential development hereafter approved, the impact fee shall be calculated at the time of site plan approval or building permit application if the proposed development is not sufficiently defined to permit such calculation. Notwithstanding the foregoing, the fee shall be re-calculated for building permit applications filed more than three (3) years following the date of the applicable preliminary plat, preliminary short plat or site plan approval.

(C) For development not necessitating or having been previously granted preliminary plat, preliminary short plat or site plan approval, the impact fee shall be calculated and imposed at the time of building permit application.

VMC 20.97.060(B) and (C). The City's intent in enacting its impact fee ordinance and the legislature's intent in RCW 82.02.050 are at issue in this appeal.

### III. *New Castle v. City of La Center* Standards

■ In *New Castle*, we held that impact fees do not change a land use decision. *New Castle*, 98 Wn. App. at 232. Cities, as such, may impose impact fees on new developments. Here, the court relied on *New Castle* to affirm the hearing examiner's decision. Pavlina asserts that *New Castle* does not apply because the City could not impose impact fees on a project the City approved before it adopted its impact fee ordinance.

### A. Preliminary Site Plan Approval

■■ Pavlina argues that a municipality's preliminary site plan approval is a final land use decision for the

purpose of charging traffic impact fees. He asserts that he received the right to complete the project according to the terms of the approval with the City's preliminary approval of the Parkway project. We disagree because the City's intent for the impact fee ordinance directly contradicts this argument.

Preliminary approval is not final approval. Under VMC 20.97.060(B) and (C), applying for a building permit triggers the imposition of impact fees. Further, there is no guaranty that an applicant receiving preliminary approval will actually build a development.

The intent of the legislature and the city of Vancouver was to impose fees on new growth and development. A preliminary approval is not new growth and development. Growth and development occur when the approved project is under construction. There is no reason to collect impact fees on a preliminary approval. Thus, impact fees are collected at the time an applicant applies for a building permit. VMC 20.97.060(B) and (C). That is when the proposed project begins to affect the public facilities of a city and not at the preliminary approval phase.

## B. Additional Conditions of Approval

■ Pavlina contends that because he had an approved development when he sought a building permit from the City, the City cannot impose additional conditions of approval on his development. To support his contention he mistakenly relies on *Mission Springs, Inc. v. City of Spokane*, 134 Wn.2d 947, 954 P.2d 250 (1998). Contrary to Pavlina's contention, the City's traffic impact fees (TIFs) are not additional conditions of approval.

As we decided in *New Castle*, impact fees do not affect physical aspects of development, therefore, they cannot be viewed as an additional condition of approval. Pavlina's argument that the City's traffic impact fees are an additional condition of approval is wrong. As stated earlier, impact fees are assessed when an applicant applies for a

building permit. When the applicant received preliminary approval for a project is irrelevant as are the original conditions for approval. The trigger for imposition of impact fees is the building permit application.

As we stated in *New Castle*, TIFs are not "land use control ordinances." *New Castle*, 98 Wn. App. at 236. The hearing examiner correctly applied *New Castle* when he found that, because TIFs are not land use control ordinances, a city may impose them on an approved application even if they were not an original condition of approval.

*Mission Springs* is not analogous to the present case. There, the Spokane City Council voted to withhold a grading permit from Mission Springs even though the company had met all the city's requirements. *Mission Springs*, 134 Wn.2d at 956-57. The Supreme Court held that the city council did not have a right to withhold a grading permit in order to allow the city time to undertake further studies regarding the project. *Mission Springs*, 134 Wn.2d at 961. That situation is completely different from the case at bar.

## C. Vested Rights

██ Pavlina argues that the superior court erroneously applied *New Castle* in deciding this case. He asserts that *New Castle* does not apply to this case because there was no preliminary approval in *New Castle* like in the present case. We disagree.

Pavlina appears to argue that he has vested rights and thus the City cannot impose impact fees. But as we noted in *New Castle*, an impact fee is not a land use ordinance that vests with the application. *New Castle*, 98 Wn. App. at 232-33.

In *New Castle*, we held that TIFs do not affect any physical aspects of development or the types of uses allowed. *New Castle*, 98 Wn. App. at 237. If the fees did, a TIF would be subject to the vested rights doctrine. *New Castle*,

98 Wn. App. at 237. We further noted that a TIF is a fee charged on new development. *New Castle*, 98 Wn. App. at 232. Since traffic impact fees do not limit land use, the City can impose them on a development at the building permit application stage.

Pavlina attempts to distinguish *New Castle* by contending that unlike in *New Castle*, he had obtained preliminary approval of his development. But we addressed this issue, noting:

> Thus, the fee calculated by LaCenter at the time of preliminary plat approval would bear little relationship to the actual impact of growth at the time the permit is issued.
>
> . . . If the fee were frozen, then new growth could take place without the developer paying its fair share for improving public facilities.

*New Castle*, 98 Wn. App. at 237. RCW 82.02.050 clearly intended for developers to pay for their share of system improvements. In order to accomplish this goal, impact fees must be imposed at the time of building permit application. It was irrelevant in *New Castle* that the developer had previously obtained preliminary plat approval and it is irrelevant here.

### IV. Interpretation of the City's Impact Fee Ordinance

#### A. New Growth and Development

■■ ■■ Pavlina asserts that the City's impact fee ordinance does not apply to Phase IV because it is not a new development. Pavlina relies on the dictionary definition of "new." Br. of Appellant at 23. The statute at issue is not ambiguous and thus we need not use a dictionary definition to interpret the statute. *See Davis v. State ex rel. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999) (the court does not construe an unambiguous statute). RCW 82.02.050 is not ambiguous. The legislature intended for impact fees to be imposed on new growth and development. The City adopted its impact fee ordinance in 1995. Phase IV

did not receive final plat approval and building permits until after 1995. Thus, the City's impact fee ordinance applies to Phase IV.

■■ ■■ Where there are possibly differing interpretations of a statute, a court must look to the reasons the legislature enacted the statute and construe the statute consistent with the legislative purpose. NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 46:07, at 199 (6th ed. 2000). As previously discussed, the purpose of RCW 82-.02.050 is to ensure that developers pay a proportionate share of costs for using public facilities when they build new developments. RCW 82.02.050(1) is clear.

Yet Pavlina relies on the word "new." But RCW 82.02.050 uses the phrase "new growth and development" in its intent section. VMC 20.97.020 also uses this phrase in its purpose statement. Thus, impact fees are imposed on projects that contribute to new growth and development. It is not important that an applicant received preliminary plat approval before the 1990 amendment to the Growth Management Act or the 1995 impact fee ordinance enactment. Growth and development occur at the time a person applies for their building permit. At that point, growth and development begin and the new project affects the City's existing systems. This is when the legislature and the City intended developers to share in the costs of new facilities.

## B. Impact Fee Calculation

Pavlina asserts the City has authority to impose an impact fee on a proposed development only if the development fits one of the triggering events in VMC 20.97.060. He further argues that the City is able to impose impact fees under VMC 20.97.060 only on new development approved after 1995. Again, we disagree.

Pavlina's interpretation of VMC 20.97.060 contradicts the clear legislative intent of state law and the local ordinance. Pavlina adds the word "not" to VMC 20-.97.060(C): "For development not necessitating or [not]

having been previously granted preliminary . . . ." Pavlina adds "not" based on *The Oxford Dictionary of American Usage and Style*. Br. of Appellant at 28. But this change is unnecessary.

By doing so, he changes the meaning of the subsection and creates a $111,000 loophole the local legislative body did not intend. We add to a statute only when absolutely necessary to make the statute rational. *McKay v. Dep't of Labor & Indus.*, 180 Wn. 191, 194, 39 P.2d 997 (1934). Adding the word "not" violates this rule.

Further, when a party asserts that a different meaning applies to a clear and unambiguous statute, that party has the burden of showing the contrary legislative intent. SINGER, *supra* § 46:01, at 125. Here, that intent was to ensure that "new growth and development" pay for the facilities it impacts. Br. of Resp't at 45. Pavlina fails to meet this burden. He provides no evidence to contravene this intent.

### V. TIF for Parkway Plaza

Pavlina contends that the County analyzed 615 trips in the SEPA checklist for site plan and plat approval in 1988. But the record does not support this statement. Further, it is 817 new ADTs that did not exist in 1988 for which Pavlina must pay traffic impact fees not 615 ADTs.

Pavlina's error in calculating the ADTs appears to arise from his belief that SEPA already mitigated the new trips. The SEPA checklist from 1988 contained a handwritten note in the margin stating that Phase IV would contribute 615 ADTs. Nothing in the record suggests that a County employee made this note. There is no evidence that the SEPA checklist considered the new trips resulting from Phase IV.

Applying impact fees to all 817 of the trips is consistent with statutory and case law. As already noted, the legislative intent of RCW 82.02.050 is to "ensure that adequate facilities are available to serve new growth and develop-

ment." This is accomplished when developers "pay a proportionate share of the cost of new facilities needed to serve new growth and development." Phase IV will create 817 previously nonexistent trips served by the facilities the impact fees funded. Thus, Pavlina must pay his proportionate share for the use of those facilities.

## VI. Attorney Fees

The City requests attorney fees for defending this appeal. Under RCW 4.84.370, reasonable attorney fees and costs are to be awarded to the prevailing party or substantially prevailing party on appeal. The City prevailed in front of the hearing examiner and at the superior court. It also prevails in front of this court. Thus, we award reasonable attorney fees and costs to the City, upon compliance with RAP 18.1.

Affirmed.

MORGAN, A.C.J., and VAN DEREN, J., concur.