[No. 27832-8-III.   Division Three.   May 27, 2010.]

DEER CREEK DEVELOPERS, LLC, ET AL., *Appellants*, v. SPOKANE COUNTY, *Respondent*.

2

4

*Stacy A. Bjordahl* (of *Parsons/Burnett/Bjordahl LLP*), for appellants.

*David W. Hubert*, for respondent.

¶1 KULIK, C.J. — The Deer Creek Project (Project) contemplated 280 residential units in 23 buildings built in two phases on property near Spokane International Airport (SIA) and Fairchild Air Force Base (FAFB). The property is

zoned light industrial (LI). Deer Creek Developers LLC (Deer Creek) obtained a building permit for phase I of the Project during a time when the Spokane County Code (SCC) permitted residential uses in the LI zone. Deer Creek filed an environmental checklist stating that its SEPA[1] checklist covered phase I and phase II but that only phase I would be built at that time. Deer Creek also submitted a unified site plan. Later, the Board of County Commissioners of Spokane County (Commissioners) amended the LI zone to prohibit single family, duplex, and multifamily residential uses for all LI zones located in the "West Plains, West Plains/Thorpe UGAs [urban grown areas]."[2] This area included phase II of the Deer Creek property. Deer Creek then submitted an application for a conditional use permit for phase II. Spokane County issued a mitigated determination of nonsignificance (MDNS). Following a public hearing, the hearing examiner denied Deer Creek's request for a conditional use permit. Deer Creek appealed to superior court, which affirmed the decision of the hearing examiner.

¶2 On appeal, Deer Creek contends the hearing examiner erred by (1) concluding that Deer Creek's development rights in phase II had not vested, (2) denying the conditional use permit, and (3) concluding that phase II conflicts with comprehensive plan policies for the LI zone.

¶3 We affirm the decision of the hearing examiner denying the conditional use permit.

FACTS

¶4 The Deer Creek property is located near SIA and FAFB. The property is zoned LI. In May 2005, the Commissioners adopted an amendment to the Spokane County Zoning Code that affected the LI zone by allowing all uses permitted in the regional commercial zone to also be permitted in the LI zone. All residential uses—including mul-

---

[1] State Environmental Policy Act (SEPA), chapter 43.21C RCW.

[2] Clerk's Papers at 89.

tifamily, duplex, and single family dwelling—were now allowed in the LI zone. Because expanded uses were now allowed in the LI zone, residential development was increasingly proposed and approved near SIA and FAFB.

¶5 The Project contemplated 280 residential units (located in 23 buildings) garages, carports, recreational amenities, and green space. Deer Creek submitted the Project as two phases. On February 9, 2006, Deer Creek filed an application to the Spokane County Division of Building and Planning (Building and Planning) to obtain grading permits for phase I. That same day, an environmental checklist was submitted to Building and Planning for review of the Project under SEPA. The checklist stated that

> [t]here is Phase I & Phase II which we are doing a SEPA report for both phases, however, Phase I will only be constructed at this time.

Administrative Record (AR) at 995.

¶6 Deer Creek submitted building permit applications for phase I. A unified site plan was prepared on July 27, 2006, and submitted on February 4, 2008, depicting phases I and II. Between July and September 2006, building permits were issued for phase I. Deer Creek began construction of the buildings in phase I as well as the infrastructure that would support phase I and phase II. Deer Creek states that it expended millions of dollars on the infrastructure and several million dollars on roads and utilities, including water and sewer for both phase I and phase II.

¶7 On October 3, 2006, approximately 18 months after the Commissioners adopted the amendment allowing residential uses in the LI zone, the Commissioners imposed a six-month moratorium on the acceptance of land use applications for residential development in the LI zone. The Commissioners extended the moratorium for additional six-month periods. On January 1, 2008, the Commissioners amended the LI zone to prohibit single family, duplex, and multifamily residential uses for all LI zones located within

the "West Plains, West Plains/Thorpe UGAs" (West Plains/Thorpe UGAs). Clerk's Papers at 89. The amendment to the LI zone was limited geographically to a certain area, while all other LI zones retained the right to construct residential property. And residential use was allowed in the West Plains/Thorpe UGAs only for the period between May 25, 2005 and October 3, 2006.

¶8 On February 4, 2008, Deer Creek submitted an application for a conditional use permit to Building and Planning. On April 15, 2008, Building and Planning issued a MDNS for the application. A hearing examiner conducted a public hearing on the application. On July 3, the hearing examiner entered findings of fact and conclusions of law denying the conditional use permit application.

¶9 Deer Creek timely filed a land use petition in Spokane County Superior Court challenging the hearing examiner's decision. The superior court denied the petition and affirmed the hearing examiner's decision. Deer Creek appeals.

## ANALYSIS

¶10 Under the Land Use Petition Act, chapter 36.70C RCW, this court stands in the same position as the superior court, limiting its review to the record before the hearing examiner. *Pavlina v. City of Vancouver*, 122 Wn. App. 520, 525, 94 P.3d 366 (2004); RCW 36.70C.120. We apply the standard of review set forth in RCW 36.70C.130(1)(a) through (f) to the hearing examiner's decision. Here, Deer Creek challenges the hearing examiner's decision under RCW 36.70C.130(1)(b), (c), (d), and (f). These provisions read:

(1) The superior court, acting without a jury, shall review the record and such supplemental evidence as is permitted under RCW 36.70C.120. The court may grant relief only if the party seeking relief has carried the burden of establishing that one of the standards set forth in (a) through (f) of this subsection has been met. The standards are:

. . . .

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

. . . .

(f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130.

¶11 We review de novo questions of law under RCW 36.70C.130(1)(b) and (f). *Cingular Wireless, LLC v. Thurston County*, 131 Wn. App. 756, 768, 129 P.3d 300 (2006). RCW 36.70C.130(1)(d) requires a showing of a clearly erroneous application of the law to the facts. *Cingular Wireless*, 131 Wn. App. at 768. The reviewing court may find a decision clearly erroneous only when it is left with the definite and firm conviction that the hearing examiner made a mistake. *Id.* Under RCW 36.70C.130(1)(c), the reviewing court examines a factual determination for substantial evidence. This court views the evidence in the light most favorable to the party who prevailed before the hearing examiner, granting deference to the hearing examiner's view of the credibility of the witnesses and evidence. *City of University Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001) (quoting *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618, 829 P.2d 217 (1992)).

¶12 *Vesting.* Deer Creek first argues that phase II vested when Deer Creek submitted its initial development documents in July 2006. We disagree because while Deer Creek did submit a SEPA checklist that referred to phase I and phase II and other submissions, the documents did not constitute a "project permit" under SCC 13.200.001.

■ ¶13 In 1987, the Washington legislature codified Washington's common law vested rights doctrine for building permit applications. LAWS OF 1987, ch. 104, § 1. This legislation, RCW 19.27.095(1), states in part:

> A valid and fully complete building permit application for a structure, that is permitted under the zoning or other land use control ordinances in effect on the date of the application shall be considered under the building permit ordinance in effect at the time of application, and the zoning or other land use control ordinances in effect on the date of application.

The Washington vested rights rule promotes a "date certain" vesting point. *Abbey Rd. Grp., LLC v. City of Bonney Lake*, 167 Wn.2d 242, 251, 218 P.3d 180 (2009).

¶14 The vested rights doctrine guarantees the applicant the right to have the project reviewed under the laws and regulations in effect at the time of the application. *W. Main Assocs. v. City of Bellevue*, 106 Wn.2d 47, 53, 720 P.2d 782 (1986). The vested rights doctrine also applies to applications for other construction permits. *See, e.g., Beach v. Bd. of Adjustment of Snohomish County*, 73 Wn.2d 343, 438 P.2d 617 (1968).

¶15 The hearing examiner concluded that the vested rights doctrine did not apply to the phase II application because a complete building permit application had not been submitted before October 3, 2006, when the proposed use of the site had been prohibited by the county's zoning code. Deer Creek makes several arguments seeking to expand the vested rights doctrine to phase II.

■ ¶16 Deer Creek first argues that the vested rights doctrine should be expanded to include subdivision applications. To support this argument, Deer Creek relies on *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 943 P.2d 1378 (1997). In *Noble Manor*, the court concluded that the legislative intent of RCW 58.17.033 extended the vested rights doctrine to applications for preliminary plats, including the right to obtain building permits for development that is indicated in the plat application. *Noble Manor*, 133 Wn.2d at 284-85.

¶17 Deer Creek maintains that *Noble Manor* establishes that the judicial expansion of the vested rights doctrine includes land uses disclosed on a plat application. In Deer Creek's view, this expansion of the vested rights doctrine includes a right to develop the property such that the developer is allowed to finish any project contemplated in the land use application.

¶18 This argument is unpersuasive. First, *Noble Manor* considered an application for a plat. Second, Deer Creek's argument was recently rejected in *Abbey Road*. Abbey Road filed a site plan application for a multifamily condominium development with the city of Bonney Lake. The application was denied based on a later adopted zoning change which prohibited the proposed type of development. Abbey Road challenged the denial. The hearing examiner found that Abbey Road's rights had not vested. The superior court reversed. The Court of Appeals reversed and held that filing a building permit application is necessary to vest development rights. *Abbey Rd.*, 167 Wn.2d at 247.

¶19 At the Washington Supreme Court, Abbey Road argued, as Deer Creek does here, that the vesting doctrine should be extended because the cost of submitting a site plan application requires a level of commitment that entitles the developer to a vested right. However, in *Abbey Road*, the court concluded that " 'RCW 19.27.095(1) is unequivocal and requires a "valid and fully complete building permit application" be submitted for development rights to vest "on the date of the application." ' " *Abbey Rd.*, 167 Wn.2d at 253 (quoting *Abbey Rd. Grp., LLC v. City of Bonney Lake*, 141 Wn. App. 184, 194, 167 P.3d 1213 (2007), *aff'd*, 167 Wn.2d 242, 218 P.3d 180).

¶20 Like *Abbey Road*, Deer Creek also suggests that this court should expand the vesting doctrine to site plan applications to protect due process rights because the permit process necessarily delays and frustrates vesting for large projects. In *Abbey Road*, the court concluded that in the absence of a local vesting ordinance, RCW 19.27.095(1) establishes that the "date certain" standard for vesting is

used regardless of the size of the project. *Abbey Rd.*, 167 Wn.2d at 260. Moreover, the court noted that there was no ordinance or regulation preventing Abbey Road from filing a site plan and a building permit application together. *Id.* at 257. Similarly here, the developer made the election to file a site development plan before filing a building permit plan for phase II.[3]

¶21 Like Abbey Road, Deer Creek also argues that the vesting rights doctrine should be expanded to all land use applications. Deer Creek maintains that this change would harmonize the common law vesting doctrine, provide certainty to developers, protect developers' expectations against fluctuating land use policies, and update a doctrine that has failed to keep pace with increasingly complex changes in the land development process. However, in *Abbey Road*, the court concluded that "such a rule would eviscerate the balance struck in the vesting statute. While some of Abbey Road's arguments could support a change in the law, instituting such broad reforms in land use law is a job better suited to the legislature," not the judiciary. *Abbey Rd.*, 167 Wn.2d at 261. Deer Creek's arguments that the vested rights doctrine should be expanded to include site plan applications or a SEPA report for a multipermit project are unpersuasive.

¶22 Deer Creek next asserts that Washington courts have recognized an exception to the requirement of a completed building permit based upon due process concerns of fundamental fairness. Deer Creek relies on *Valley View Industrial Park v. City of Redmond*, 107 Wn.2d 621, 733 P.2d 182 (1987) and *Parkridge v. City of Seattle*, 89 Wn.2d 454, 573 P.2d 359 (1978).

¶23 The vested rights doctrine and the statutory authority for the vesting of developments clearly define the point at which vesting occurs and that is when a building permit

---

[3] Deer Creek points out that building permits are valid for only 180 days unless construction has commenced and continues. SCC 13.300.108. Deer Creek argues that it would have been impossible to commence construction within 180 days. However, Deer Creek is not challenging the 180-day limitation and, in any event, this is a matter that is best resolved through the legislative process.

or plat application is submitted for county approval. *Abbey Rd.*, 167 Wn.2d at 260; *Noble Manor*, 133 Wn.2d at 278. Hence, even if Deer Creek received assurances from the county that the proposed development had vested, these representations could not operate to vest the proposed development unless a building permit or plat permit had been submitted. *See Valley View*, 107 Wn.2d at 636; *Parkridge*, 89 Wn.2d at 465-66. In *Parkridge* and *Valley View*, the developers submitted incomplete building permits and complained that the city had hindered their efforts to complete them. *Valley View*, 107 Wn.2d at 639; *Parkridge*, 89 Wn.2d at 465-66. Deer Creek did not submit a building permit for phase II. In addition, Deer Creek provides no persuasive evidence as to who made the alleged reassurances and when.

¶24 Deer Creek devotes several pages of its brief to a description of the various ways that the documents mention phase II. For example, Deer Creek quotes responses to the SEPA checklist indicating that the SEPA report would cover both phase I and phase II. These references did not trigger vesting because Deer Creek failed to file an application for a building permit for phase II. A SEPA checklist and a site plan are insufficient to trigger vesting in Washington under state law.

¶25 *Vesting by Local Regulation.* "Within the parameters of the doctrine established by statutory and case law, municipalities are free to develop vesting schemes best suited to the needs of a particular locality." *Erickson & Assocs. v. McLerran*, 123 Wn.2d 864, 873, 872 P.2d 1090 (1994). The purpose of Title 13 SCC is to "describe how Spokane County will process applications for project permits" and to establish "procedures to provide for the effective processing and review of project permits." SCC 13.100.102.

¶26 Spokane has adopted its own vesting ordinance under Title 13 SCC, entitled "Public Works Application Review Procedures for Project Permits." In Title 13 SCC, the

county has defined a project permit or project permit application:

> "Project permit" or "project permit application" means any land use or environmental permit or license required from a review authority for a project action, including but not limited to building permits, short plats, subdivisions, binding site plans, planned unit developments, conditional uses, variances, shoreline permits, *site plan review*, permits or approvals required by the Critical Area Ordinance, site-specific zone reclassifications, manufactured home parks, and change of condition requests, but excluding the permits/licenses specified herein, and those permit applications excluded by RCW 36.70B.140.

SCC 13.200.001 (emphasis added).

¶27 Deer Creek contends that a site plan was completed for both phase I and phase II, thereby completing the requirements of SCC 13.200.001. Deer Creek also asserts, and the county disputes, that county officials told Deer Creek that phase II was vested, making it necessary for Deer Creek to submit an application for a building permit specifically for phase II. Deer Creek also argues that phase II is vested because it meets the requirements of the County's handouts.

¶28 Deer Creek failed to apply for a building permit for phase II; the only applications submitted to the County were building permits for phase I, not phase II. Under SCC 13.600.106(e), a site plan review is necessary for a building permit. Here, no site plan review occurred.

¶29 Deer Creek submitted an application for a building permit for phase I and included a site plan for phase II. SCC 13.200.001 provides that type I and type II applications require different review processes. Type II applications require a public hearing. Site plan review is a type II application. There was no application requesting a site plan review for phase II. Nothing in the application for the building permit for phase I indicates that review was sought for phase II. Significantly, the SCC process provided a method to consolidate the building application process for

phase I with phase II. If Deer Creek had requested such consolidation in writing pursuant to SCC 13.1000.102, a public hearing would have been required.

¶30 Because Deer Creek did not follow the procedures in the SCC for phase II and filed an application for a building permit only for phase I, phase II did not vest.

¶31 Deer Creek contends that the county required the submission of the phase II site plan in Handout BP-51. This handout is entitled "Application Submittal Requirements: Building Permits" and it reads, in part, as follows:

> Commercial applications need to be accompanied by two (2) complete sets of plans, specifications, engineering calculations, diagrams, soil investigation reports, special inspection and structural observation programs and other data as applicable to the particular project. In addition, commercial applications need to include seven (7) sets of overall site development plan(s) locating the building(s) or structures on the property and detailing the specifics of the building or structures, landscaping, parking, road approach, stormwater drainage facilities, conditions required by the Zoning Code or other county regulations, conditions imposed during a hearing process or other site improvements being proposed.

Suppl. Br. of Pet'rs, Ex. B.

¶32 Assuming that Handout BP-51 applies, its requirements are centered on the particular commercial building permit sought. Different requirements apply to any accompanying overall site plans and no review process is triggered for the accompanying overall site plan. However, nothing in Handout BP-51 may contradict the requirements in SCC 13.1000.102. Consequently, the procedures of SCC 13.1000.102 were not followed and vesting of phase II did not occur.

¶33 Deer Creek relies on *Noble Manor* to support its argument that vesting occurred with regard to phase II. In *Noble Manor*, the developer filed for a short plat to divide a piece of property into three lots to build three duplexes. *Noble Manor*, 133 Wn.2d at 272. The county accepted one

building permit application but rejected two others. After the developer filed his applications but before they were approved, the county adopted an interim ordinance changing the minimum lot size for a duplex. *Id.* The county refused to accept the two applications based on the interim ordinance. The developer eventually completed work on the duplexes and sued the county for delay damages caused by a stop-work order. *Id.* at 273. The trial court granted summary judgment in favor of the county, concluding that an application for land division vested only the right to divide the property. *Id.* at 274. The Court of Appeals reversed the grant of summary judgment and remanded for a determination whether the developer was entitled to damages. *Id.*

¶34 The Washington Supreme Court disagreed. The court concluded that "when the Legislature extended the vested rights doctrine to plat applications, it intended to give the party filing an application a vested right to have *that application* processed under the land use laws in effect at the time of the application." *Id.* at 278. Similarly, the court concluded that "when a developer makes an application for a specific use, then the applicant has a right to have that application considered under the zoning and land use laws existing at the time the completed plat application is submitted." *Id.* at 285. Unlike *Noble Manor*, here Deer Creek did not file an application for a building permit for phase II; consequently, vesting occurred for phase I but not for phase II.

■■ ■■ ¶35 *Compatible Use.* The county's provision governing the approval or denial of a conditional use permit or expansion of a nonconforming use, Spokane County Zoning Code 14.404.100, reads as follows:

1. The Hearing Examiner may approve an application for a conditional use permit if the following criteria are met.

a. The special standards set forth for the conditional use in the underlying zone of the Zoning Code are met.

b. Adequate conditions and restrictions on the conditional use are adopted to ensure that the conditional use will be

compatible with other permitted uses in the area, and will not be materially detrimental to the public health, safety or general welfare.

¶36 The hearing examiner concluded that the Project here "is generally not compatible with other permitted uses in the area." AR at 36. However, the county concedes that "the other criteria for allowing the non-conforming use are met." Resp't's Br. at 19. The record shows that the Project complies with the requirements for necessary public infrastructure, including sewer, water, transportation, drainage, and roads, and that conditions have been placed on the Project to ensure that it is compatible with other uses.

¶37 The county argues the denial of the expansion of the nonconforming use was proper because the possibility of a future threat to the expansion of SIA or a change in the mission of FAFB constitutes a material detriment to the public safety, health, and general welfare.

¶38 The hearing examiner concluded that

the approval of high density residential development on the site would weaken existing protection for the airport and Fairchild AFB, the flying public and future residents, by allowing incompatible development and potential hazards closer to the critical phases of aircraft approach and departure operations; and would jeopardize the future viability of such facilities.

AR at 62.

¶39 The unchallenged facts establish that the Deer Creek site will be subject to airport noise for the foreseeable future and that the noise impact zones for FAFB expand and contract as the mission of FAFB changes. Findings of fact also establish that a multifamily development on the Deer Creek site would adversely impact the layout, length, and orientation of a proposed runway for SIA and will jeopardize current and future SIA operations.

¶40 The Federal Aviation Administration (FAA) expressed concern that the proposed development would be located within the " 'area of influence' " of two major air-

ports and in a potential cumulative noise impact area for both airports. AR at 47. The FAA was also concerned about the volume of aircraft approaching SIA or FAFB that would fly over high-density residential development at low altitudes, subjecting the residents to considerable single event noise impacts. According to the FAA, "permitting high density residential uses, or high concentrations of residential use, within the vicinity of the airport weakens the existing protection for the airport, the flying public and future residents; by allowing incompatible development and potential hazards closer to the critical phases of aircraft approach and departure operations." AR at 49. The FAA also contended that these actions "would violate written assurances and contractual commitments given by the City and County . . . to the federal government to protect the airport [and] could jeopardize the receipt of future federal grants." AR at 49.

¶41 Based on the unchallenged findings, there are sufficient facts to support the hearing examiner's conclusion that the conditional use would be detrimental to the public health, safety, or general welfare.

¶42 *Conflicts with the Comprehensive Plan Policies.* Deer Creek contends the hearing examiner erred by concluding that phase II conflicts with the comprehensive plan policies for the LI category. In Deer Creek's view, even though the comprehensive plan policies for the LI zone discourage residential uses, these policies must yield to the more specific zoning regulations *outside* the West Plains/Thorpe UGAs.

¶43 To the extent a comprehensive plan prohibits a use that a zoning code permits, the use is permitted. *Lakeside Indus. v. Thurston County*, 119 Wn. App. 886, 895, 83 P.3d 433 (2004). But where the zoning code itself expressly requires that a proposed use must comply with both the zoning code and the comprehensive plan, the proposed use must comply with both the zoning code and the comprehensive plan. *Id.*

¶44 Deer Creek's argument is without merit. Deer Creek maintains that the more specific zoning regulation that applies is the one *outside* the West Plains/Thorpe UGAs. The Commissioners amended the LI zone to prohibit single family, duplex, and multifamily uses for all LI zoned land located in West Plains/Thorpe UGAs. Deer Creek planned to site phase II *inside* the West Plains/Thorpe UGAs. This amendment to the LI zone applies to Deer Creek's application for a building permit for phase II. Phase II conflicts with both the applicable zoning regulations and the comprehensive plan.

¶45 *Motion To Dismiss.* The Commissioners approved Deer Creek's application for a building permit for phase I. Deer Creek then filed an application for a conditional use permit "to allow an expansion of a nonconforming use to allow expansion of Deer Creek [apartments]." AR at 82. When the hearing examiner denied this request, Deer Creek appealed to superior court and then this court.

¶46 The County seeks to dismiss this appeal, arguing that the issue of whether phase II of the Project is vested must be dismissed because the issue of vesting was not before the hearing examiner. Deer Creek filed a motion to strike the County's motion to dismiss.

¶47 The hearing examiner made a finding of fact and conclusion of law regarding vesting. He stated:

> Because a complete building permit application for the current multi-family project was not submitted prior to October 3, 2006, the proposed use of the site is prohibited by the County Zoning Code; except through the approval of the current application. See Washington case law on vesting, and Section 13.300.100 (Standard of Review) of Spokane County Code.

AR at 61.

¶48 We, thus, deny the County's motion to dismiss and Deer Creek's motion to strike the County's motion to dismiss.

## CONCLUSION

¶49 We deny the County's motion to dismiss and Deer Creek's motion to strike the County's motion to

dismiss and supplemental brief. We conclude that phase II did not vest because Deer Creek did not file an application for a building permit. We affirm the decision of the hearing examiner denying the conditional use permit.

SWEENEY and BROWN, JJ., concur.

Review denied at 170 Wn.2d 1021 (2011).