FILED
COURT OF APPEALS
DIVISION II

2014 JUL 29 AM 11: 39

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RICHARD COLF, | No. 44818-1-II |
| Appellant, | |
| v. | |
| CLARK COUNTY, | UNPUBLISHED OPINION |
| Respondent. | |

HUNT, J. — Richard Colf appeals the superior court's affirmance of the Clark County hearing examiner's notice and order finding Colf in violation of Clark County Code (CCC) 40.260.210(C)(3) for having a second mobile home on his property without the required temporary dwelling permit. Colf argues that the superior court and hearing examiner both erred in their interpretation of the Clark County Code and in finding (1) that he violated CCC 40.260.210(C)(3) (second mobile home); and (2) that CCC 14.32A.130(3) ("nonconforming" mobile homes) and CCC 14.32A.140(4) ("preexisting use" exemption) did not exempt him from this CCC 40.260.210(C)(3) violation. We affirm.

## FACTS

### I. MOBILE HOME PERMIT

On April 1, 1993, Rachel Lingafelt[1] applied for a temporary mobile home placement permit to install a second mobile home as a residence for her father on her Clark County property. Lingafelt's application acknowledged that such a temporary permit would be valid for up to two years; that when the permit expired, it was subject to review; and that if she met all the original permit requirements, she could renew the permit for up to two more years.

On May 5, 1993, the County approved Lingafelt's "hardship"[2] temporary dwelling permit for the second mobile home but set it to expire one year later on May 5, 1994. This temporary permit actually lapsed and expired sooner, on November 5, 1993, because Lingafelt never requested or obtained the required inspections and approvals to support her original permit application. Nor did Lingafelt ever seek to renew her temporary permit after it expired.

Almost five years later, in July 1998, Richard Colf purchased Lingafelt's property and the two mobile homes[3] situated on it. Colf made improvements to the mobile homes but never applied for or obtained a mobile home permit from the county.

On October 3, 2011, "Clark County Code Enforcement" (Code Enforcement) received an inquiry through its "Permit Service Center" about the expired hardship mobile home permit issued for Colf's property in 1993. Clerk's Papers (CP) at 100. On October 10, Code

---

[1] Rachel Lingafelt was known as Rachel Cairns when she purchased the property in 1987. She later changed her name to Rachel Butler.

[2] Clerk's Papers (CP) at 6.

[3] Only the second mobile home, for which Lingafelt's temporary permit expired, is at issue in this appeal.

Enforcement Coordinator Kevin A. Pridemore issued a notice to Colf that (1) the original temporary dwelling permit for the second mobile home on his property had expired on May 5, 1994; (2) such temporary hardship permits require renewal every two years; and (3) if the hardship no longer existed, the owner must remove the mobile home. Colf replied to Pridemore that under CCC 14.32A.130(3), the mobile home was lawful because Lingafelt had applied for and had been issued a permit in 1993. Further correspondence between Colf and Code Enforcement ensued.

On June 4, 2012, Code Enforcement issued a notice to Colf that he had violated CCC 40.260.210(C)(3) by failing to obtain temporary occupancy approval for the mobile home, for which the previous permit (Lingafelt's) had expired on May 5, 1994. Code Enforcement ordered Colf to obtain a permit, to remove the mobile home for the property, or to appeal.

## II. PROCEDURE

Colf appealed the Code Enforcement officer's notice and order to a Clark County Code Enforcement hearing examiner. At the hearing, Pridemore testified that Code Enforcement had sent Colf three letters informing him of the mobile home permit's 1994 expiration. Colf testified that (1) he had purchased the property with two manufactured homes on it; and (2) he had not obtained a permit for the mobile homes. The hearing examiner reviewed the parties' exhibits, including: the notice and order to Colf, correspondence between Colf and Clark County Code Enforcement, Colf's deeds, the real estate contract for the property, a description of and maps of Colf's property, Lingafelt's 1993 application and approved temporary permit for her second mobile home, and printouts of relevant Clark County ordinances.

3

No. 44818-1-II

The hearing examiner also considered CCC 40.260.210(C)(3) and former chapter 18.413 CCC[4] (language similar to CCC 40.260.210), both of which provide that a temporary dwelling permit is valid for two years and may be renewed for two years upon written substantiation by the applicant. The hearing examiner also considered CCC 14.32A.130(3) and CCC 14.32A.140, which describe the types of property exempt from chapter 14.32A (mobile/manufactured home) requirements.

The hearing examiner ruled that the County had sustained its burden of proving that Colf was in violation of CCC 40.260.210(C)(3). The hearing examiner noted that (1) the second mobile home had been placed on the property as a temporary dwelling under former chapter 18.413 CCC; (2) the temporary permit, on its face, had expired on May 5, 1994; and (3) this temporary permit was not renewed.[5] The hearing examiner issued a final order (1) denying Colf's appeal; (2) affirming Code Enforcement's order; (3) requiring Colf to pay Clark County $750 as the accrued penalty; (4) ordering Colf to remove the second mobile home from the property or to apply for a boundary line adjustment to locate the second mobile home on a separate parcel; and (5) in the latter situation, if a boundary line adjustment was approved, to obtain all required inspections and approvals for the second mobile home.

---

[4] *Repealed by* Clark County Ordinance 2003-11-01, § 5.

[5] In response to Colf's argument that the second mobile home was a prior nonconforming use and, therefore, exempt from chapter 14.32A CCC requirements, the hearing examiner ruled that the second manufactured home was not legally on the property as of the effective date of chapter 14.32A CCC, October 13, 2003, citing CCC 14.32A.130(3) and CCC 14.32A.140(4). In response to Colf's argument that the second mobile home was not a "temporary dwelling" because it was permanently attached to the property, the hearing examiner noted that the meaning of the term was clear from the context of CCC 40.260.210. CP at 11.

The superior court affirmed the hearing examiner's order, ruling that Colf had not sustained his burden of proof under the Land Use Petition Act (LUPA)[6] to show that the hearing examiner had erroneously interpreted the law, lacked substantial evidence to support his final order, or erroneously applied the law to the facts of the case. Colf appeals.

## ANALYSIS

Colf argues that the superior court and the hearing examiner erred in their interpretation of the Clark County Code and in finding that he had violated CCC 40.260.210(C)(3) in maintaining the second mobile home on his property without the required permit because the second mobile home was exempt from the code requirements under CCC 14.32A.130(3) and CCC 14.32A.140(4). These arguments fail.

### I. STANDARD OF REVIEW

LUPA governs judicial review of Washington land use decisions. *HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs.*, 148 Wn.2d 451, 467, 61 P.3d 1141 (2003). In a LUPA appeal, an appellate court reviews the decision of the "local jurisdiction's body or officer with the highest level of authority to make the determination." RCW 36.70C.020(2)[7]; *Citizens to Pres. Pioneer Park, LLC v. City of Mercer Island*, 106 Wn. App. 461, 470, 24 P.3d 1079 (2001). We stand "in the shoes of the superior court," limiting our

---

[6] Ch. 36.70C RCW.

[7] The legislature amended RCW 36.70C.020 in 2009 and 2010. LAWS OF 2009, ch. 419, § 1; LAWS OF 2010, ch. 59, § 1. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

review to the record before the hearing examiner. *Pavlina v. City of Vancouver*, 122 Wn. App. 520, 525, 94 P.3d 366 (2004); RCW 36.70C.120(1).

A party seeking relief from a hearing examiner's land use decision must establish one of six bases listed in RCW 36.70C.130(1)[8]:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
> (d) The land use decision is a clearly erroneous application of the law to the facts;
> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
> (f) The land use decision violates the constitutional rights of the party seeking relief.

Colf asserts that the hearing examiner's decision was an erroneous interpretation of the law under RCW 36.70C.130(1)(b). Whether a decision is an erroneous interpretation of the law is a question of law, which we review de novo. *Lauer v. Pierce County*, 173 Wn.2d 242, 252, 267 P.3d 988 (2011).

We interpret local ordinances using the same rules of construction that apply to statutes. *Sleasman v. City of Lacey*, 159 Wn.2d 639, 643, 151 P.3d 990 (2007). When an ordinance is unambiguous, we give effect to the plain meaning of an ordinance. *State v. Villarreal*, 97 Wn. App. 636, 641-42, 984 P.2d 1064 (1999), *review denied*, 140 Wn.2d 1008 (2000). That two or

---

[8] The legislature amended RCW 36.70C.130 in 2009. LAWS OF 2009, ch. 419, § 2. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

more interpretations are conceivable does not render an ordinance ambiguous. *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 305, 268 P.3d 892 (2011). We find no ambiguity here.

## II. "TEMPORARY DWELLING"

Asserting that a "temporary dwelling" encompasses more than a manufactured or mobile home, Colf challenges the superior court's and the hearing examiner's interpretation of "temporary dwelling" under CCC 40.260.210(C)(3).[9] This code provision sets forth the following limitations for a "temporary dwelling permit":

> A temporary dwelling permit shall be valid for two (2) years, and may be renewed by the issuing body for successive two (2) year periods upon written substantiation by the applicant to the continuing hardship or need justification. Upon the expiration of the two (2) year period, or at the end of each successive two (2) year period(s), if granted, the applicant shall notify the responsible official in writing that the temporary dwelling has been removed and, further, said notice shall include a request for an inspection to determine that the temporary dwelling has, in fact, been removed in compliance with the permit.

CCC 40.260.210(C)(3).

Colf incorrectly asserts that the Clark County Code does not define "temporary dwelling." Br. of Appellant at 8. CCC 40.260.210(B)(1)(c) defines a "temporary dwelling" as "a temporary structure such as a mobile home designed, constructed and maintained in a manner which will facilitate its removal at such time as the justifying hardship or need no longer exists." The record shows that (1) the mobile home in question on Colf's property had been a temporary home for Lingafelt's father, for which the County had granted a temporary dwelling permit on hardship grounds; (2) by its own terms this temporary permit automatically expired in *one year* if Lingafelt did not apply for another permit; (3) Lingafelt's temporary permit actually expired

---

[9] Br. of Appellant at 8.

No. 44818-1-II

before this one-year date when she failed to submit the required inspections; (4) neither Lingafelt nor Colf notified the County that the temporary hardship condition had ceased or continued; and (5) neither had applied for a permit to retain the mobile home on the property.

Colf fails to show that the hearing examiner and superior court erroneously interpreted the term "temporary dwelling" under CCC 40.260.210(C)(3) or misapplied that code provision to the second mobile home on his property, for which he had no permit. Thus, his challenge fails.

### III. PREEXISTING MOBILE HOME NOT EXEMPT UNDER CHAPTER 14.32A CCC

Colf next argues that under CCC 14.32A.130(3) and (4), and under CCC 14.32A.140(4), the second mobile home on his property did not violate any Clark County ordinances. More specifically, he contends that the mobile home was exempt from needing a new temporary dwelling permit under CCC 14.32A.130(3) and CCC 14.32A.140(4) because (1) Lingafelt had previously obtained a permit for the second mobile home; (2) by virtue of this permit, she had "legally" placed the mobile home on the property in 1993; and (3) therefore, the mobile home had been "'legally installed, placed, or existing prior[10] to'" the 2003 effective date of the applicable ordinances, within the meaning of CCC 14.32A.140(4). Br. of Appellant at 11 (quoting CCC 14.32A.140(4)).

---

[10] Colf further asserts that the word "prior" in CCC 14.32A.140(4) means that a manufactured home is exempt *if at any time before the 2003 effective date* of chapter 14.32A CCC, the mobile home is deemed legally installed, legally placed, or legally existing. Br. of Appellant at 13. Colf is incorrect.

8

We do not consider Colf's contention that chapter 14.32A CCC exempts him from having to obtain a permit for the second mobile home[11] because the County charged him with violating a different code, CCC 40.260.210(C)(3) (temporary dwelling permit for second mobile home). And under its plain language, CCC 14.32A.130(4) exemptions apply only to "the requirements set forth in [chapter 14.32A CCC]."[12] Thus, chapter 14.32A CCC exemptions do not shield Colf from his CCC 40.260.210(C)(3) violation.[13]

---

[11] We recognize that both the hearing examiner and the superior court addressed the merits of Colf's chapter 14.32A CCC exemption argument. We, however, do not find it necessary to reach this issue.

[12] CCC 14.32A.130(3) provides:
> All manufactured homes installed in Clark County before the effective date of ordinance codified in this chapter which do not comply with the requirements set forth *in this chapter* are deemed to be nonconforming.

(Emphasis added). Addressing placement of a *single* mobile home on a property, CCC 14.32A.140(4) provides a limited exemption for "[m]anufactured homes legally installed, placed, or existing prior to the effective date of this chapter, as described in Section 14.32A.130(3)"; but this exemption is limited to exemption from "the requirements *of this chapter*." CCC 14.32A.140 (emphasis added). By this plain language, this chapter 14.32A CCC exemption does not apply to violations charged under other chapters, such as Colf's violation of CCC 40.260.210(C)(3).

[13] We note, however, that even if Colf could claim the CCC 14.32A.130(3) and CCC 14.32A.140(4) exemptions, his arguments would fail. Under CCC 14.32A.140(4) Colf must show that the manufactured home was "legally installed, placed, or existing prior to" that provision's 2003 effective date. As we have already explained, Lingafelt's temporary dwelling permit for the second mobile home on the property expired on November 5, 1993. Accordingly, absent an application for renewal of this permit, the second mobile home's placement on Colf's property was no longer "legal" after the permit's 1993 expiration, well before chapter 14.32A CCC's 2003 enactment. Thus, the second mobile home did "not comply with the requirements set forth in [this chapter 14.32A CCC]," and the second mobile home was not eligible for the exemptions under CCC 14.32A.140(4), which apply *only* to "[m]anufactured homes legally installed, placed, or existing prior to the effective date of this chapter."

No. 44818-1-II

We affirm both the hearing examiner's ruling and order and the superior court's affirmance of the hearing examiner.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Lee, J.

10