

FILE
IN CLERK8 OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 1 2 2017

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Oct 12, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | No. 93829-6 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| JOSHUA M. BARNES, | ) | |
| | ) | Filed ___OCT 1 2 2017___ |
| Respondent. | ) | |

OWENS, J. — In 2015, after attempting to steal a riding lawn mower, Joshua

Barnes was arrested and charged with theft of a motor vehicle. He filed a motion to

dismiss, claiming that a riding lawn mower is not a "motor vehicle" under RCW

9A.56.065, Washington's theft of a motor vehicle statute.

RCW 9A.56.065 prohibits theft of a motor vehicle. However, neither the statute

nor the criminal code explicitly defines the term "motor vehicle." Though a plain

reading of the term could conceivably include a riding lawn mower, the legislature

intended otherwise. Because the act itself denotes a restrained definition, we find that as

a matter of law, a riding lawn mower is not a "motor vehicle" for purposes of the theft of a motor vehicle statute.

FACTS AND PROCEDURAL HISTORY

In 2015, Barnes and his girlfriend allegedly tried to steal a riding lawn mower from a property outside Leavenworth, Washington. After seeing a pickup truck drive past her home, the property owner heard her riding lawn mower starting up. Looking out a window, she saw Barnes attempting to ride her lawn mower up a ramp and onto the bed of his pickup truck. The owner confronted Barnes, who returned the lawn mower. As he and his girlfriend drove away, the owner wrote down the license plate number and called the police, providing a description of both individuals. Barnes was arrested two days later and charged with second degree theft and second degree criminal trespass. The State later added the charge of theft of a motor vehicle under RCW 9A.56.065 and 9A.56.020.

Barnes objected to the motor vehicle charge under *State v. Knapstad,* 107 Wn.2d 346, 729 P.2d 48 (1986). He argued that the definition of "motor vehicle" does not include riding lawn mowers. He pointed to RCW 46.04.320 and RCW 46.04.670, the definitions of "motor vehicle" and "vehicle" in our vehicle and traffic statutes, noting that a riding lawn mower is similar to a golf cart under those statutes. Because golf carts are explicitly excluded from either definition, Barnes contended that the legislature similarly intended to exclude riding lawn mowers. Because lawn

mowers are designed for pruning grass rather than for transporting people or cargo on a public roadway, he argued they are not included in the theft of a motor vehicle statute.

The State countered that the statute is clear on its face. It noted that the lawn mower is "self-propelled," as required by RCW 46.04.320. Further, it is "capable of being moved upon a public highway" while carrying people or cargo as required by RCW 46.04.670. Because a lawn mower fits into the definitions provided in our vehicle and traffic laws, and because the legislature did not include an explicit exception for lawn mowers, the State argued a riding lawn mower qualifies as a "motor vehicle."

The superior court agreed with Barnes. It explained that if a statute is plain on its face, the court must give effect to that plain meaning. However, it noted the court is also required to take into account the statute's context and to effectuate the legislature's intent. Accordingly, the trial court found the legislature had not intended that riding lawn mowers be included under the theft of a motor vehicle statute and dismissed the charge.

The State delayed prosecution of Barnes's remaining charges and moved the Court of Appeals for review. The Court of Appeals affirmed. *State v. Barnes*, 196 Wn. App. 261, 382 P.3d 729 (2016). It noted that if a statute is clear, the plain language should be taken on its face. However, the court's fundamental task is to

"ascertain and carry out the intent of the legislature." *Id.* at 266. It opined that the statute is clear on its face, but questioned "whether we should always follow the plain meaning principle." *Id.* at 269. It reasoned that "[a] thing within the letter of the law, but not within its spirit, may be held inoperative when it would otherwise lead to an absurd conclusion." *Id.* at 271 (citing *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 421, 486 P.2d 1080 (1971)). Because of this, the Court of Appeals agreed with the trial court that a riding lawn mower is not a "motor vehicle" for purposes of the statute. *Id.* at 276.

The State sought discretionary review, which we granted. *State v. Barnes*, 187 Wn.2d 1017, 390 P.3d 348 (2017).

## ISSUE

Is a riding lawn mower a "motor vehicle" for purposes of RCW 9A.56.065?

## STANDARD OF REVIEW

Under *Knapstad*, the trial court should dismiss a criminal charge if there are "no disputed material facts and the undisputed facts do not raise a prima facie case of guilt as a matter of law." *State v. Bauer*, 180 Wn.2d 929, 935, 329 P.3d 67 (2014) (citing *Knapstad*, 107 Wn.2d at 356-57). We review *Knapstad* findings de novo. *State v. Montano*, 169 Wn.2d 872, 876, 239 P.3d 360 (2010).

ANALYSIS

Our "paramount duty in statutory interpretation is to give effect to the Legislature's intent." *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992) (citing *Wash. Pub. Power Supply Sys. v. Gen. Elec. Co.*, 113 Wn.2d 288, 292, 778 P.2d 1047 (1989)). When a statute does not define a term, we give the term "'its plain and ordinary meaning unless a contrary legislative intent is indicated.'" *State v. Jones*, 172 Wn.2d 236, 242, 257 P.3d 616 (quoting *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998)). We generally derive this plain meaning from the "context of the entire act" as well as other related statutes. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). We may also determine the plain meaning of an undefined term from a standard English dictionary. *State v. Fuentes*, 183 Wn.2d 149, 160, 352 P.3d 152 (citing *State v. Bahl*, 164 Wn.2d 739, 754, 193 P.3d 678 (2008)).

Here, RCW 9A.56.065 does not explicitly define "motor vehicle." Both parties suggest we use the term "vehicle" as defined in RCW 9A.04.110(29), using by reference the definition of "motor vehicle" in our vehicle and transport laws. RCW 46.04.320, .670. However, we decline to do so. The legislature chose not to define "motor vehicle" in our theft statutes. Because the term is undefined, we give it its

5

plain and ordinary meaning as ascertained from a standard English dictionary. *Fuentes*, 183 Wn.2d at 160.[1]

A "motor vehicle" is defined as "an automotive vehicle not operated on rails; *esp[ecially]* : one with rubber tires for use on highways." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1476 (2002). "Automotive" is defined as "containing within itself the means of propulsion . . . of, relating to, or concerned with vehicles or machines that propel themselves (as automobiles, trucks, airplanes, motorboats)." *Id.* at 148. In the context of this statute, these definitions contemplate cars and other automobiles designed for transport of people or cargo, but not machines designed for other purposes yet capable of transporting people or cargo. Yet these definitions could conceivably include riding lawn mowers. Though designed for pruning grass, riding lawn mowers are nonetheless self-propelled means of transport. However, the legislature has explicitly indicated a contrary legislative intent.

---

[1] The dissent argues that we should apply the definition of "vehicle" from RCW 9A.04.110(29) because a "motor vehicle" is always also a "vehicle." Dissent at 3-4. But even identical terms can have different meanings in different parts of a single statute. *Yates v. United States*, __ U.S. __, 135 S. Ct. 1074, 1082, 191 L. Ed. 2d 64 (2015). Here, we are confronted with two slightly different terms: "motor vehicle" in RCW 9A.56.065, the theft statute under which Barnes was prosecuted, and "vehicle" in RCW 9A.04.110(29), the catchall definitional statute. The legislature enacted the catchall definition over 30 years before it enacted the theft statute. LAWS OF 2007, ch. 199, § 29 (enacting RCW 9A.56.065); LAWS OF 1975, 1st Ex. Sess., ch. 260, § 9A.04.110 (enacting definition of "vehicle" now codified at RCW 9A.04.110(29)). And when it enacted the theft statute, in 2007, it simultaneously codified a statement of findings and intent that equates "motor vehicles" with cars. *See* discussion *infra*. Given this context, we decline to equate "motor vehicle" in RCW 9A.56.065 with "vehicle" in the catchall definitional statute.

6

The act itself indicates that the legislature contemplated automobiles, rather than riding lawn mowers, when it used the term "motor vehicle" in the theft of a motor vehicle statute. The 2007 act's short title is "the Elizabeth Nowak-Washington auto theft prevention act." LAWS OF 2007, ch. 199, § 29.[2] In its findings, the legislature used the term "motor vehicle" or "vehicle" 10 times. *Id.* § 1. Yet, it used the terms "car," "auto," or "auto theft" 14 times. *Id.* It further noted that "[t]he family car is a priority of most individuals and families." *Id.* § 1(1)(a). While other crime had decreased over time, "auto theft ha[d] increased over fifty-five percent" since 1994; over 50,000 thefts occurred in 2005 alone. *Id.* § 1(1)(b). The legislature also noted that "auto theft . . . is linked more and more to offenders engaged in other crimes." *Id.* § 1(1)(c). Indeed, "[m]any stolen vehicles are used by criminals involved in such crimes as robbery, burglary, and assault." *Id.* The legislature passed this bill with the explicit purpose of curbing the rising rate of auto thefts.

While not necessary to our holding, the statute's legislative history also supports the conclusion that the legislature never intended riding lawn mowers to be included under the theft of a motor vehicle statute. Before passage, advocates of the bill noted the high rate of auto theft and the comparatively low penalty for repeat offenders under the then-current theft scheme. H.B. REP. ON ENGROSSED THIRD

---

[2] Elizabeth Nowak was a Seattle police officer who was killed in a collision involving a stolen car. Verbatim Report of Proceedings at 4-5.

SUBSTITUTE BILL 1001, at 9-10, 60th Leg., Reg. Sess. (Wash. 2007). They explained auto theft's connection to other crimes, including identity theft, methamphetamine possession, and gang activity. *Id.* It is clear that auto theft, not lawn mower theft, was the primary concern when the bill was drafted. Where that is the case, courts will, consistent with other relevant statutory language, construe a general term so as to further that specific purpose. *See Yates v. United States*, ___ U.S. ___, 135 S. Ct. 1074, 1080, 191 L. Ed. 2d. 64 (2015) (construing the term "tangible object," in destruction-of-evidence statute passed to combat corporate fraud, to incorporate only those objects that can store information, and thus exclude fish).

Here, Barnes did not attempt to steal a "family car," nor is the riding lawn mower he attempted to take a comparable investment to a family car. He did not attempt to steal anything that could reasonably be used for a later robbery, burglary, or assault. There is nothing to indicate a connection between the theft of lawn mowers and drug possession or gang activity.

The plain meaning of "motor vehicle" is clear. The legislature has explicitly indicated it intended to focus this statute on cars and other automobiles. It was responding to increased auto theft, not increased riding lawn mower theft. Though the definition of "motor vehicle" could be more expansive in other statutes, the only statute at issue here is the theft of a motor vehicle statute. Because of this, we hold that a riding lawn mower is not a "motor vehicle" under RCW 9A.56.065.

8

## CONCLUSION

We hold that a riding lawn mower is not a "motor vehicle" under RCW 9A.56.065. The statute does not define "motor vehicle" for purposes of theft. However, the legislature has made its intent clear. The session law indicates it was designed to combat auto theft and associated crime, not the theft of lawn mowers. Barnes cannot be charged with theft of a motor vehicle for stealing a riding lawn mower. Therefore, we affirm the Court of Appeals and remand to the trial court for further proceedings.

WE CONCUR:

No. 93829-6

WIGGINS, J. (concurring) — I agree with the lead opinion's conclusion that a lawn mower is not a motor vehicle for purposes of RCW 9A.56.065. I write separately to clarify two analytical steps: First, we should consider the entirety of the statute when interpreting the phrase "motor vehicle." Second, after concluding that "motor vehicle" is ambiguous, we must serve the legislature's stated intent in light of the circumstances in which the statute was passed. Following this analytical process, I conclude that the legislature did not intend the statute that it named the "Elizabeth Nowack-Washington auto theft prevention act"[1] to encompass theft of riding lawn mowers.

## I. The Meaning of "Motor Vehicle" in RCW 9A.56.065 Is Ambiguous

I agree with the lead opinion's characterization of our statutory interpretation process. Our "'paramount duty in statutory interpretation is to give effect to the Legislature's intent.'" Lead opinion at 4 (quoting *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992)). "If the statute's meaning is plain on its face, we give effect to that plain meaning as the expression of what was intended." *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010). In determining whether a statute conveys a plain meaning, "that meaning is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4

---

[1] The enacted statute provided that the act "be known as the Elizabeth Nowak-Washington auto theft prevention act." LAWS OF 2007, ch. 199, § 29.

(2002). "If a statute is ambiguous, we 'may look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent.'" *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 305-06, 268 P.3d 892 (2011) (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

The complete statutory text begins with the title of the act. I thus begin at the beginning—with the title.

## A. The Title of the Act Concerns Automobiles

The title of a bill carries particular importance in Washington; the Washington Constitution provides that "[n]o bill shall embrace more than one subject, and *that shall be expressed in the title.*" WASH. CONST. art. II, § 19 (emphasis added). This restraint on the legislative process was explained by Thomas Cooley as having three general purposes:

> *first* to prevent *hodge-podge*, or "log-rolling" legislation; *second*, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, *third*, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire.

THOMAS M. COOLEY, A TREATISE ON THE CONSTITUTIONAL LIMITATIONS WHICH REST UPON THE LEGISLATIVE POWER OF THE UNITED STATES OF THE AMERICAN UNION 173 (5th ed. 1883) (1998). A title satisfies article II, section 19 if it "so indicates its substance and scope as to reasonably lead to an inquiry into its content." *DeCano v. State*, 7 Wn.2d 613, 626, 110 P.2d 627 (1941). Put differently, "the material representations in the title must not be

misleading or false." *Wash. Ass'n for Substance Abuse & Violence Prevention v. State*, 174 Wn.2d 642, 660, 278 P.3d 632 (2012).

All words used in a title "'must be taken in their common and ordinary meanings.'" *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 226, 11 P.3d 762 (2000) (quoting *DeCano*, 7 Wn.2d at 626). Where the body of the statute would substantially alter the meaning of the words used in the title, the statute may violate article II, section 19. *See, e.g., id.* at 225-27. However, this court will also "construe statutes to avoid constitutional doubt." *Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434, 341 P.3d 953, *cert. denied*, 136 S. Ct. 79 (2015). Thus, construing a statute's scope to accord with the enacted title may avoid a constitutional dilemma.

> Here, the title of the auto theft prevention act reads as follows:
>
> AN ACT Relating to auto theft; amending RCW 9A.56.030, 9A.56.040, 9A.56.150, 9A.56.160, 9.94A.734, 13.40.0357, 13.40.210, 9A.56.070, and 9A.56.096; reenacting and amending RCW 9.94A.525, 9.94A.515, 13.40.160, and 46.63.110; adding new sections to chapter 9A.56 RCW; adding new sections to chapter 13.40 RCW; adding a new section to chapter 36.28A RCW; adding a new chapter to Title 46 RCW; creating new sections; and prescribing penalties.

LAWS OF 2007, ch. 199. This title refers to "auto theft"—not to motor vehicle theft. "Auto" is a short form of the word "automobile," which means "a usu[ally] 4-wheeled automotive vehicle designed for passenger transportation on streets and roadways and commonly propelled by an internal-combustion engine using a volatile fuel (as gasoline)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 148 (2002). From a commonsense perspective, this title suggests that the legislature intended to address theft of passenger vehicles—not theft of lawn mowers. And from a constitutional perspective, the title "fairly apprise[d] the people" that the accompanying legislation concerned passenger vehicles—

not lawn mowers. COOLEY, *supra*, at 173. For both of these reasons, the title sets the

stage for interpreting the ensuing statutory language to mean passenger vehicles.

I now turn to consider the first section of the legislation: the enacted legislative findings

and statement of intent.

### B. The Enacted Legislative Findings and Statement of Intent Suggest a Legislative Concern with Automobile Theft

Although the opening section creates some ambiguity as to the scope of the new

legislation, it generally supports the idea that the legislation concerns theft of passenger

vehicles. The legislature's enacted intent section provides as follows:

> It is the intent of this act to deter motor vehicle theft through a statewide
> cooperative effort by combating motor vehicle theft through tough laws,
> supporting law enforcement activities, improving enforcement and
> administration, effective prosecution, public awareness, and meaningful
> treatment for first time offenders where appropriate. It is also the intent of
> the legislature to ensure that adequate funding is provided to implement this
> act in order for real, observable reductions in the number of auto thefts in
> Washington state.

LAWS OF 2007, ch. 199, § 1(2). This statement alone does not resolve whether a riding

lawn mower should be considered a motor vehicle for purposes of the auto theft

prevention act. But as a statement of legislative intent embedded in the statute, it shows

the legislative focus on "auto thefts in Washington state." *Id.*

On the one hand, the statement uses both the term "motor vehicle" and the word

"auto." Generally, "[w]hen the legislature uses two different terms in the same statute,

courts presume the legislature intends the terms to have different meanings." *Densley v.*

*Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007). Thus, the fact that the

legislature used the term "auto" in this intent section but "motor vehicle" in the operative

act suggests that the legislature intended to cover a broader class of theft than simply theft of automobiles.

On the other hand, we also adhere to the principle of noscitur a sociis, that is,

a single word in a statute should not be read in isolation. Rather, the meaning of a word may be indicated or controlled by reference to associated words. In applying this principle to determine the meaning of a word in a series, a court should "take into consideration the meaning naturally attaching to them from the context, and . . . adopt the sense of the words which best harmonizes with the context."

*State v. Gonzales Flores*, 164 Wn.2d 1, 12, 186 P.3d 1038 (2008) (alteration in original) (citation and internal quotation marks omitted) (quoting *State v. Roggenkamp,* 153 Wn.2d 614, 623, 106 P.3d 196) (1999)). Here, the legislature appears to use the words "auto," "automobiles," "car," "vehicles," and "motor vehicles" interchangeably. Consider the first three sentences in the statement of legislative findings:

(1) The legislature finds that:

(a) Automobiles are an essential part of our everyday lives. The west coast is the only region of the United States with an increase of over three percent in motor vehicle thefts over the last several years. The family car is a priority of most individuals and families.

LAWS OF 2007, ch. 199, § 1.[2] This language treats these different terms synonymously, suggesting that the legislature understood a motor vehicle, as used in this statute, to mean something akin to a passenger vehicle or family car. This understanding is consistent with the title of the act, which described the topic of concern as autos in particular. Automobile theft was the malady; the legislature's action was the remedy.

---

[2] The remaining legislative findings continue to alternate between the words "car," "auto," "vehicles," "motor vehicles," and "family car." *Id.* § 1.

Thus, a reader of the title and these initial legislative statements would be well prepared to expect a statute dealing with automobile theft.

I now turn to the next section, which created the crime of "theft of a motor vehicle."

## C. *The Statute's Definition of "Motor Vehicle Theft" Is Circular and Unhelpful*

RCW 9A.56.065 reads in its entirety, "(1) A person is guilty of theft of a motor vehicle if he or she commits theft of a motor vehicle. (2) Theft of a motor vehicle is a class B felony." This language is plainly circular. Defining "theft of a motor vehicle" as "theft of a motor vehicle" is quintessentially unhelpful in interpreting the meaning of the statute. And while the term "motor vehicle"—not "auto" or "car"—is used, the legislature also seemed to use these words interchangeably in the previous section; perhaps the legislature continued to treat them interchangeably. Certainly, the statute does not herald an abrupt departure from the preceding section and title, both of which suggest that the topic at issue is automobiles. Absent further explanation in the statutory section itself, I thus proceed to consider whether "motor vehicle" is more clearly defined elsewhere in the criminal statutes.

## D. *Related Statutory Definitions Compound Existing Ambiguity*

The complete phrase "motor vehicle" is not defined in Washington's criminal statutes. However, "vehicle" is defined as follows: "'[v]ehicle' means a 'motor vehicle' as defined in the vehicle and traffic laws, any aircraft, or any vessel equipped for propulsion by mechanical means or by sail."[3] RCW 9A.04.110(29). This definition incorporates the

---

[3] Without explanation, the lead opinion declines to rely on this statutory definition, instead turning to dictionary definitions. Lead opinion at 5. However, a motor vehicle is merely a special category of vehicle—one with a motor. Thus, I disagree with the lead opinion's dismissal of the statutory definition of "vehicle" as irrelevant.

definition of "motor vehicle" in the civil context. Unfortunately, the definition of "motor

vehicle" in the civil statute is still ambiguous.[4]

"Motor vehicle" in the civil statute is defined as follows:

> "Motor vehicle" means *every vehicle that is self-propelled* and every vehicle that is propelled by electric power obtained from overhead trolley wires, *but not operated upon rails*. "Motor vehicle" includes a neighborhood electric vehicle as defined in RCW 46.04.357. "Motor vehicle" includes a medium-speed electric vehicle as defined in RCW 46.04.295. An electric personal assistive mobility device is not considered a motor vehicle. A power wheelchair is not considered a motor vehicle. A golf cart is not considered a motor vehicle, except for the purposes of chapter 46.61 RCW.

RCW 46.04.320 (emphasis added). Because this section defines a "motor vehicle" as a

"vehicle that is self-propelled," I also consider the civil definition of "vehicle":

> "Vehicle" includes every device capable of being moved upon a public highway and in, upon, or by which any persons or property is or may be transported or drawn upon a public highway, including bicycles. "Vehicle" does not include power wheelchairs or devices other than bicycles moved by human or animal power or used exclusively upon stationary rails or tracks. Mopeds are not considered vehicles or motor vehicles for the purposes of chapter 46.70 RCW. Bicycles are not considered vehicles for the purposes of chapter 46.12, 46.16A, or 46.70 RCW or RCW 82.12.045. Electric personal assistive mobility devices are not considered vehicles or motor vehicles for the purposes of chapter 46.12, 46.16A, 46.29, 46.37, or 46.70 RCW. A golf cart is not considered a vehicle, except for the purposes of chapter 46.61 RCW.

RCW 46.04.670. To summarize, "vehicle" in the criminal context is defined as "motor

vehicle" in the civil context, which in turn is defined as a type of vehicle. This somewhat

---

[4] The dissent concludes that "motor vehicle" as defined by the criminal statute's definition of "vehicle" is clear and unambiguous. Dissent at 2. I disagree. The dissent truncates its analysis of RCW 46.04.320 by failing to consider the subsidiary definition of "vehicle" in the civil statute, and fails to consider the fully enacted statement of legislative intent and the act's title. LAWS OF 2007, ch. 199, § 1. If our "paramount duty in statutory interpretation" truly is "to give effect to the Legislature's intent," then surely we must consider duly enacted legislative statements of intent as part of the statutory text. *Elgin*, 118 Wn.2d at 555.

circular definition means that any motor vehicle in the criminal context must also meet the definition of a "vehicle" in the civil context and be self-propelled.

Here, it is not clear whether a riding lawn mower meets the civil definition of "vehicle." On the one hand, the phrase "capable of being moved upon *a public highway*" constrains the meaning of the word "vehicle."[5] *Id.* (emphasis added). By including this phrase, the legislature did not define "vehicle" to encompass all devices that may be drawn on the ground, or even on private roads; rather, the legislature was concerned with objects that move on public streets and on public highways. Objects that can move along the earth, but that are not present in the public sphere, would not appear to meet this definition of "vehicle." Thus, a riding lawn mower would not meet the definition of a vehicle because it is not the sort of object generally operating on public roads. *But see* THE STRAIGHT STORY (Walt Disney Pictures 1999).

On the other hand, the statutory definition of "vehicle" also explicitly excludes objects that would not normally operate in the public sphere, such as "[e]lectric personal assistive mobility devices." RCW 46.04.670. If such items were not encompassed by the statutory definition, why would they need to be expressly excluded? Thus, one might reasonably conclude that the definition of "vehicle" is quite broad, including all items that move along the ground—such as riding lawn mowers.

In the face of these competing logical inferences, I conclude that RCW 46.04.670's definition of "vehicle" and, by extension, RCW 46.04.320's definition of "motor vehicle"

---

[5] The phrase "upon a public highway" was part of the original 1927 statute, which defined "vehicle" as follows: "[e]very device in, upon or by which any person or property is or may be transported or drawn upon a public highway excepting devices moved by human power or used exclusively upon stationary rails or tracks." LAWS OF 1927, ch. 309, § 2(a).

are ambiguous. If these definitions were clear and plain, one might reasonably rely on these definitions to determine the scope of the auto theft prevention act. But they are neither clear nor plain. Instead, we have a statutory title and legislative statements strongly suggesting that the legislature was concerned with automobiles in particular, a statutory section that fails to provide any definition, and existing definitions of "vehicle" and "motor vehicle" that do little to clarify whether a lawn mower meets the relevant criteria. Having considered the entirety of the statutory text, I can conclude only that "motor vehicle" is an ambiguous phrase. I therefore turn to the circumstances in which the legislature acted for further evidence of legislative intent.

## II.    The Auto Theft Prevention Act Was Passed To Curb Automobile Theft

In 2007, the Washington legislature adopted the auto theft prevention act, including RCW 9A.56.065, to address increased car theft and the use of stolen cars in the commission of crimes.

Before the legislature passed RCW 9A.56.065, theft of everything from automobiles to lawn mowers to baby strollers was already theft. The act did not purport to criminalize conduct that was previously legal. Instead, the new law took a certain category of theft and made it uniformly subject to a certain level of punishment. For instance, before RCW 9A.56.065, a person stealing a car worth $5,500 was guilty of theft in the first degree (a class B felony), while a person stealing a car worth $4,500 was merely guilty of theft in the second degree (a class C felony). The new statute abolished this value distinction, making theft of motor vehicles of any value a class B felony.

Seen in the prism of context, it seems plain that the legislature was attempting to reclassify a certain category of theft and treat that category uniformly. It would contradict

this motivating principle to treat theft of riding lawn mowers, a very different type of item, as a class B felony. Indeed, if our true aim in statutory interpretation is to ascertain and carry out the legislative intent, a clear answer emerges from this context. The legislature intended to punish and deter theft of automobiles according to the acknowledged impact of this crime on the lives of Washingtonians. Thus, the legislature did not intend to reclassify the punishment for stealing a riding lawn mower. And by reaching this conclusion, I avoid the constitutional question of whether an expansive definition of "motor vehicle" would violate article II, section 19 by failing to conform to the statute's title, which specifically concerns automobiles.

Thus, because the act's title refers to auto theft, because the legislature appeared concerned with addressing automobile theft in particular, and because a narrow reading avoids a constitutional dilemma, I conclude that theft of a motor vehicle does not include theft of a riding lawn mower. I respectfully concur in the lead opinion.

No. 93829-6

GONZÁLEZ, J. (dissenting)—After Joshua Barnes was caught trying to steal a riding lawn mower, the State charged him with stealing a motor vehicle. RCW 9A.56.065 ("A person is guilty of theft of a motor vehicle if he or she commits theft of a motor vehicle."). Prior to trial, Barnes moved to dismiss the charge, arguing that there were no facts under which the State could convict him of theft of a motor vehicle because a riding lawn mower does not qualify as a "motor vehicle." I agree with the lead opinion that "a plain reading of the term ['motor vehicle'] could conceivably include a riding lawn mower," and that it is not inconceivable for the legislature to have intended this result.[1] Lead opinion at 1. Our analysis should turn on the statute's plain language, but the lead opinion rewrites the statute because it believes the legislature probably meant "automobiles." *Id.* at 6. The statute clearly says "'motor vehicle'" and the legislature provided a broad definition of "vehicle," RCW 9A.04.110(29), which

---

[1] "[I]f a result 'is conceivable, the result is not absurd.'" *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 311, 268 P.3d 892 (2011) (quoting *State v. Ervin*, 169 Wn.2d 815, 824, 239 P.3d 354 (2010)).

includes all self-propelled vehicles, such as low-speed, four-wheeled neighborhood electric vehicles, RCW 46.04.320, and farm mowing machines, RCW 46.04.180. Because I believe the court generally should not disregard or circumvent an otherwise plain meaning, I respectfully dissent.

The task of drafting criminal statutes "is decidedly the province of the legislature." *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 311, 268 P.3d 892 (2011). It is not our place to question the wisdom of a statute when the meaning is clear just because its results seem unduly harsh. *Id.* (citing *Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997)).

The legislature has defined "motor vehicle" to mean "every vehicle that is self-propelled." RCW 46.04.320. Both parties want us to apply this definition, as does the legislature. Our criminal code specifically defines "vehicle" to mean "'motor vehicle' as defined in the vehicle and traffic laws," RCW 9A.04.110(29), which includes RCW 46.04.320. Yet, the lead opinion rejects this explicit statutory definition in favor of one found in the dictionary because it believes the legislature did not intend to define the term so broadly. But even the lead opinion must admit that the legislative and dictionary definitions of "motor vehicle" are nearly the same and equally applicable to riding mowers. *Compare* lead opinion at 5-6, *with* RCW 46.04.320. The only notable difference is the guidance the legislature provides in its definition. In its definition, the legislature specifically

2

emphasized that the term included nonautomobiles such as low- and medium-speed electric vehicles, and specifically excluded specific types of self-propelled vehicles such as power wheelchairs and golf carts.[2] RCW 46.04.320. These specific inclusions and exclusions prove not only that the scope of the term "motor vehicle" is broad but also that the legislature was conscious that the term could be broadly construed and specifically intended that construction. "Motor vehicle" is to be interpreted as broadly as it plainly appears in the theft statute. Thus, while the lead opinion purports to be following "[t]he plain meaning of 'motor vehicle,'" it is not. Lead opinion at 8.

The legislature has already told us through clear, unambiguous terms what it meant by "motor vehicle." *See State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002) ("Legislative definitions included in the statute are controlling." (citing *State v. Sullivan*, 143 Wn.2d 162, 175, 19 P.3d 1012 (2001))). The lead opinion resorts to the dictionary for the meaning of "motor vehicle" and purposefully avoids the legislature's carefully crafted statutory language. But we give a term its plain and ordinary meaning ascertained from a standard dictionary only when a statutory definition is not available. *See id.* The lead opinion justifies its failure to apply this legislative definition by confining that definition to "vehicles" because

---

[2] The legislature removed golf carts from the definition of "motor vehicle" to avoid any potential conflict between its general vehicle statutes and those applying specifically to golf cart zones. *See* LAWS OF 2010, ch. 217 § 1.

RCW 9A.04.110(29) says only that "'[v]ehicle' means a 'motor vehicle' as defined in the vehicle and traffic laws." *See* lead opinion at 5. Basically, the lead opinion says the legislative definition would apply in this case only if it said, "'Vehicle' [or 'motor vehicle'] means a 'motor vehicle' as defined in the vehicle and traffic laws." This dismissal of a statutory definition seems arbitrary and capricious— when is a "motor vehicle" not a "vehicle"?

Only by ignoring the legislature's plain statutory language can the lead opinion conclude "motor vehicle" means "automobile," rather than any self-propelled vehicle. But notably, the legislature has shown through neighboring statutes that it will use the term "automobile" when it intends to do so and that the term is narrower than "motor vehicle." *See, e.g.*, RCW 9A.56.075(1) ("A person is guilty of taking a motor vehicle without permission in the second degree if he or she . . . takes or drives away any automobile or motor vehicle . . . with knowledge of the fact that the automobile or motor vehicle was unlawfully taken."). If the legislature intended to criminalize theft of an "automobile" to the exclusion of other motor vehicles, it was capable of saying so, and we should not overwrite the statute to make it so.[3]

---

[3] The concurrence argues that "motor vehicle" is ambiguous upon consideration of "the subsidiary definition of 'vehicle' in the civil statute, . . . [the] statement of legislative intent[,] and the act's title," concurrence at 7 n.4, but these interpretive aids do not detract from the need for a broad definition of "vehicle," especially in light of the neighboring statutes. First, "capable of being moved upon a public highway," RCW 46.04.670, does not "constrain the meaning of

"When possible, we derive legislative intent *solely* from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013) (emphasis added) (citing *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)); *see also* Mark DeForrest, *Washington Courts' Use of Legislative History in Statutory Interpretation: An Overview with an Eye towards IFCA*, 49 GONZ. L. REV. 437, 455-57 (2014). "Plain language that is not ambiguous does not require construction." *Evans*, 177 Wn.2d at 192 (citing *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003); *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994)). This means we must give effect to the legislature's choice of words and definitions.

I recognize that the legislature was motivated by a specific tragedy when it decided to criminalize theft of a motor vehicle, namely, the tragic death of Officer

---

the word 'vehicle'" because there are numerous vehicles in chapter 46.04 RCW that do not generally "move on public streets and on public highways." Concurrence at 8. Second, the statement of legislative intent persuasively shows that stealing a riding lawn mower was not the legislature's primary concern, but the inclusion of findings pertaining to one form of "vehicle" does not support the conclusion that the statute does not apply to other vehicles. Third, the concurrence ignores the possibility that "auto" in the statute's title simply means "self-propelling," i.e., short for "automotive," and for that reason would not run afoul of the single subject rule (an argument no party makes). WEBSTER'S THIRD INTERNATIONAL DICTIONARY 148 (2002). The title does not come close to being "'misleading or false.'" Concurrence at 2 (quoting *Wash. Ass'n for Substance Abuse & Violence Prevention v. State*, 174 Wn.2d 642, 660, 278 P.3d 632 (2012)).

Elizabeth Nowak after she was struck by a stolen vehicle, LAWS OF 2007, ch. 199 § 29. This does not mean the legislature intended to criminalize only those specific facts. Indeed, the legislature explained that it was concerned about a host of public safety and criminal accountability concerns, including theft of family cars, a significant rise in auto thefts, the correlation between auto theft and other crimes, the need for early punishment to avoid auto thefts, and the need to be more efficient in finding and recovering stolen vehicles to avoid financial loss to victims and their insurers, *id.* at § 1(1). Given these findings, the legislature explained its intent in criminalizing theft of a motor vehicle was "to deter motor vehicle theft through a statewide cooperative effort by combating motor vehicle theft through tough laws, supporting law enforcement activities, improving enforcement and administration, effective prosecution, public awareness, and meaningful treatment for first time offenders where appropriate." *Id.* at § 1(2). Consistent with this intent, the legislature purposefully passed a statute using broad terms.

By supplanting the statute's broad language with narrower terms, the lead opinion actually undermines, rather than follows, the legislature's intent. The sole basis for the lead opinion's decision is that "the legislature has explicitly indicated a contrary legislative intent." Lead opinion at 6. But at no point does the legislature say it intended "motor vehicle" to be narrowly construed to apply only to automobiles or to instances where the stolen automobile was used to commit

6

another crime. The lead opinion finds it persuasive to count the number of times specific words were used in the legislative findings, *id.* at 7, but I cannot locate any place in the act that "denotes a restrained definition" to support the lead opinion's unrestrained interpretation. *Id.* at 1.

By restricting the plain, unambiguous statutory language to some of the legislature's findings, the lead opinion shrinks the class of criminal acts available for prosecution. Under the lead opinion's analysis, theft of a motor vehicle applies at most only to theft of an automobile and possibly only to theft of a family car used to commit another crime. Is a prosecutor now required to research the legislature's reasons for enacting a particular statute to make sure particular factual scenarios fit within those reasons? Surely, this cannot be what the lead opinion intends. *See State v. Alvarez*, 74 Wn. App. 250, 258, 872 P.2d 1123 (1994) (A statement of legislative intent does not "override the unambiguous elements section of a penal statute or . . . add an element not found there."), *aff'd*, 128 Wn.2d 1, 904 P.2d 754 (1995).[4] Perhaps, the lead opinion is concerned about the primary purpose for which the motor vehicle was designed rather than its actual

---

[4] *See also* Jonathan R. Siegel, *The Use of Legislative History in a System of Separated Powers*, 53 VAND. L. REV. 1457, 1499-500 (2000) ("Like a preamble or a statement of purpose, legislative history should be treated as a special kind of statutory text that should receive less weight than the words of the operative parts of a statute."); *Alvarez*, 74 Wn. App. at 258 ("[A] statement of legislative intent, used by the Legislature as a preface to an enactment, lacks operative force in itself, although it may serve as an important guide in understanding the intended effect of operative sections." (citing *Hartman v. State Gambling Comm'n*, 85 Wn.2d 176, 179, 532 P.2d 614 (1975))).

use. Lead opinion at 6 ("Though designed for pruning grass, riding lawn mowers are nonetheless a self-propelled means of transport."). In the lead opinion's view, does a person commit theft of a motor vehicle when he or she steals a food truck or a cement truck since those vehicles are primarily designed for particular industrial jobs rather than transport, much like a riding lawn mower? What if a family rides motorcycles for their primary mode of transportation? *See generally* ch. 46.04 RCW (examples of many motor vehicles that might be excluded under the lead opinion's analysis). This lack of clarity probably illustrates why the legislature crafted the statute broadly and why the legislature—not the courts—is the branch of government best suited for crafting criminal statutes. *Five Corners Family Farmers*, 173 Wn.2d at 311.

By no means am I suggesting that courts must blindly apply statutory language no matter how absurd or unjust the result. "As is always the case no single rule of interpretation ever concludes the meaning of a statute and the final result is usually determined from many rules and comparisons." Norman J. Singer, 2A STATUTES & STATUTORY CONSTRUCTION § 47:04, at 226 (6th ed. rev. 2000). In some cases, a court may conclude that the legislature "did not intend to use certain words in their conventional sense when the text dramatically over- or undershoots the statute's overall purpose." John F. Manning, *The Absurdity Doctrine*, 116 HARV. L. REV. 2387, 2399 (2003). In those cases, we apply the

absurd results canon. An application is absurd if it "would lead to an unconscionable result, esp[ecially] one that the . . . drafters could not have intended." BLACK'S LAW DICTIONARY 11-12 (10th ed. 2014) (see entry under "absurdity"). For example, it would be absurd to prosecute a person who stole an iRobot Roomba robotic vacuum with theft of a motor vehicle even though it is motorized and could be used to transport small property.[5] It is not absurd to believe the legislature intended to criminalize the theft of riding lawn mowers as theft of motor vehicles when riding lawn mowers can be driven on a public highway, can have significant value, and can be used in the commission of a crime. The absurdity doctrine should not be used to override the State's failure to exercise prosecutorial discretion in favor of a lesser charge.

In this case, the prosecutor is in the best position to determine if theft of a motor vehicle should be substituted for a lesser charge. I would reverse and remand to the trial court and therefore respectfully dissent.

---

[5] I borrow this creative example from the Court of Appeals. *State v. Barnes*, 196 Wn. App. 261, 271, 382 P.3d 729 (2016), *review granted*, 187 Wn.2d 1017, 390 P.3d 348 (2017).

González, J.

Fairhurst, C.J.